Filed 12/12/23  Colebrook v. McGinity CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| TEENA COLEBROOK,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>TIMOTHY MCGINITY et al.,<br><br>    Defendants and<br>Respondents. | 2d Civil No. B321630<br>(Super. Ct. No. 21CV-0123)<br>(San Luis Obispo County) |

Appearing in propria persona, Teena Colebrook purports to appeal from an order sustaining respondents' demurrer to her complaint without leave to amend.  We construe the order as incorporating a judgment of dismissal, treat the appeal as taken from that judgment, and affirm.[1]

_____

[1] The record on appeal does not include a judgment dismissing appellant's complaint.  Respondents assert, "Although a proposed judgment was submitted to the trial court at its request, it does not appear judgment was ever entered."  "This appeal thus appears to have been taken from the order

Respondents are an attorney and the attorney's law firm. They represented CIT Bank, N.A. (CIT) in litigation commenced by appellant. Appellant filed several lawsuits against CIT, but lost all of them. Respondents allege that the present action "is now Appellant's <u>eighth</u> lawsuit relating to [CIT's] foreclosure of her property."

In *Colebrook v. CIT Bank, N.A.* (2021) 64 Cal.App.5th 259 (*Colebrook II*), we affirmed the judgment of dismissal entered in appellant's latest lawsuit against CIT. We concluded that the lawsuit was barred by the doctrine of res judicata. In the instant appeal appellant seeks to vindicate against CIT's attorneys the same primary right she unsuccessfully sought to vindicate against CIT. But it is questionable whether respondents are in privity with their client for res judicata purposes. (See *Kerner v. Superior Court* (2012) 206 Cal.App.4th 84, 126-128.) "[C]laim preclusion [i.e., res judicata,] can be asserted only by a party in the first action or someone in privity with a party in the first action." (*Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 318 (*Grande*).[2]

sustaining [respondents'] demurrer . . . without leave to amend. 'Orders sustaining demurrers are not appealable.' [Citation.] But 'an appellate court may deem an order sustaining a demurrer to incorporate a judgment of dismissal.'" (*Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1019.)

[2] "'[P]rivity' is not merely a term that describes a close relationship between two entities; it implies that a judgment against one could have been used against the other, even though that entity was not a party to the judgment." (*Grande, supra*, 13 Cal.5th at pp. 324-325.) Privity may also be based on a concept of derivative liability: "'[w]hen a defendant's liability is *entirely derived* from that of a party in an earlier action, claim preclusion

2

We need not resolve the privity issue. The litigation privilege protects respondents from appellant's claims. Accordingly, we affirm.

We could hold appellant in contempt and impose punitive sanctions for her unfounded attack on the integrity of this court. We decline to do so in this case, but warn her that she cannot expect such forbearance from us in the future.

*Procedural Background through the*
*Date of Our Decision in Colebrook II*

The following procedural background is taken from our prior opinion, *Colebrook II*, *supra*, 64 Cal.App.5th 259:

"In 2004 a bank loaned appellant $400,000. The loan was evidenced by a promissory note signed by appellant. The note was secured by a deed of trust encumbering appellant's real property in Hawthorne, California. The note was assigned to [CIT]. [¶] In 2013 appellant defaulted on the note. She was served with notice of default and election to sell pursuant to the deed of trust. The Hawthorne property was sold at public auction on April 10, 2015." (*Colebrook II*, *supra*, 64 Cal.App.5th at pp. 261-262.)

In 2011, 2014, and 2015 appellant filed lawsuits against CIT concerning the $400,000 loan and the deed of trust securing that loan. "For various reasons, [the] preforeclosure 2011 lawsuit was dismissed in federal court with prejudice and without leave to amend. The 2014 lawsuit was dismissed in federal court on res judicata grounds without leave to amend. In the 2014 lawsuit

---

bars the second action because the second defendant stands in privity with the earlier one.'" (*Id*. at pp. 330-331.)

3

the United States District Court concluded: '[I]n both [the 2011 and 2014] Complaints [appellant] brings causes of action that resulted from [CIT's] alleged wrongful acts in connection with the creation and transfer of the same loan.  These Complaints arise from the same transactional nucleus of facts and, therefore, the 2011 Lawsuit bars claims brought in this [the 2014] Complaint.'  The Ninth Circuit Court of Appeals found appellant's appeal 'frivolous.'  It summarily affirmed the district court's order granting [CIT's] motion to dismiss." (*Colebrook II*, *supra,* 64 Cal.App.5th at p. 262.)

"The 2015 third lawsuit was filed in Los Angeles County Superior Court.  The trial court sustained [CIT's] demurrer without leave to amend, ruling that the principles of res judicata and collateral estoppel barred all of the causes of action. [¶]  [Division 2 of the Second Appellate District] affirmed. (*Colebrook*[*, et al*]. *v. CIT Bank*, *N.A.* (Apr. 25, 2018, B279942), [2018 WL 1940330] [nonpub. opn.] [(*Colebrook I*)].)  It concluded that the doctrine of res judicata barred the 2015 lawsuit's causes of action because they were either adjudicated in the 2011 and 2014 lawsuits or could have been raised in the 2014 lawsuit.  The court reasoned that all of the actions involved the same injury – the loss of appellant's interest in the Hawthorne property." (*Colebrook II*, supra, 64 Cal.App.5th at p. 263.)

"In 2019 appellant . . . filed a complaint [against CIT] . . . alleging that the promissory note was 'fully satisfied on or about April 16th, 2015,' six days after the sale of the property.  Relying upon Civil Code section 2941, subdivision (b)(1), appellant sought declaratory relief that [CIT] must 'execute and deliver to the trustee [pursuant to the deed of trust] the original note, deed of trust, request for a full reconveyance, and other documents as

4

may be necessary to reconvey, or cause to be reconveyed, the deed of trust.' [¶] [CIT] demurred to the complaint. The trial court sustained the demurrer based on, inter alia, the doctrine of res judicata." (*Colebrook II, supra*, 64 Cal.App.5th at p. 262.) Appellant appealed. We decided the appeal in *Colebrook II*.

*Our Decision in Colebrook II*

In *Colebrook II* we held, "Pursuant to the doctrine of res judicata, the [prior court decisions] constitute final judgments on the merits precluding further litigation against [CIT] concerning the same primary right." (*Colebrook II, supra*, 64 Cal.App.5th at p. 261.) We said: "[A]ll of [appellant's] claims are premised upon and flow from [CIT's] allegedly wrongful interference with her ownership rights in the Hawthorne property. She has consistently sought to vindicate the same 'primary right.' . . . [¶] The following statement in [*Colebrook I*] applies in the present case: 'The instant action involves the same injury – [appellant's] loss of her interest in the property – as her prior lawsuits. That injury arises out of the same loan, and involves the same property and the same parties. Res judicata bars all of the causes of action asserted by [appellant]. The trial court did not err by sustaining [CIT's] demurrer, without leave to amend . . . .'" (*Id*. at p. 264.)

*The Present Action*

Our decision in *Colebrook II* was filed on May 17, 2021. Three months earlier (February 2021), appellant filed a complaint against respondents. The complaint alleged that in 2016 and 2017 respondents had promised appellant that their "client CIT would send the actual original [promissory] note and allonges to [appellant]." But these documents were not provided to her. "An allonge is a slip of paper sometimes attached to a

5

negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements.  California law permits use of an allonge to transfer a promissory note." (10 Cal.Jur.3d (August 2023 update) Bills & Notes § 112, fns. omitted.)

Appellant's complaint consisted of five causes of action: intentional misrepresentation, concealment, false promise, negligent misrepresentation, and fraud.  Appellant requested general damages of $1,440,000 and punitive damages of $4,320,000.

Respondents demurred to the complaint.  The trial court sustained the demurrer without leave to amend because appellant's action was barred by the doctrine of res judicata, the three-year statute of limitations (Code Civ. Proc., § 338, subd. (d)), and the litigation privilege (Civ. Code, § 47, subd. (b)).  We limit our review to the issue of the litigation privilege.

*Appellant's Motions in the Instant Appeal*

In the instant appeal appellant filed numerous motions and requests, hereafter collectively referred to as "motions."  Some of the motions were granted, while others were denied.  Other motions were marked "received" by the clerk's office, but were not filed because they failed to comply with court rules.  As to motions and all other documents marked "received" and for which permission to file is still pending, we grant permission to file irrespective of whether they comply with court rules.  As to motions that we have not yet ruled upon, they are denied as unmeritorious.  This includes appellant's motions received by this court on September 21, 2023, October 18, 2023, and November 1, 2023.

6

*Standard of Review*

"A demurrer tests the legal sufficiency of factual allegations in a complaint. [Citation.] A trial court's ruling sustaining a demurrer is erroneous if the facts alleged by the plaintiff state a cause of action under any possible legal theory. [Citations.]" (*Lee Newman, M.D., Inc. v. Wells Fargo Bank* (2001) 87 Cal.App.4th 73, 78.)

"[W]e apply the de novo standard of review in an appeal following the sustaining of a demurrer . . . ." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.) "[W]e assume the truth of all facts properly pleaded in the complaint and its exhibits or attachments, as well as those facts that may fairly be implied or inferred from the express allegations. [Citation.] 'We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law.' [Citation.]" (*Cobb v. O'Connell* (2005) 134 Cal.App.4th 91, 95.)

*Plaintiff's Burden on Appeal*

On appeal "[t]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer . . . ." (*Martin v. Bridgeport Community Assoc., Inc.* (2009) 173 Cal.App.4th 1024, 1031.)

*The Litigation Privilege Bars Appellant's Present Action*

Appellant contends: "[T]his case . . . involves [Respondents'] misrepresentation of material facts inducing Appellant into believing that the requested original note and allonges would be returned to Appellant once the . . . action has concluded." The misrepresentations were allegedly set forth in two letters from respondents to appellant's former attorney. One letter was sent

in December 2016.  The other letter was sent in January 2017.[3] Appellant claims that respondents have "since steadfastly refused to produce the original note and allonges as . . . promised."

"The litigation privilege, as pertinent here, states: 'A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding . . . .' (Civ. Code, § 47, subd. (b).) 'The principal purpose of [Civil Code] section 47[, subdivision (b),] is to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]' [Citation.]  The privilege also 'promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests.' [Citation.]" (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 211 (*Finton*).)  "Without the litigation privilege, attorneys would simply be unable to do their jobs properly." (*Id*. at p. 212.)

"'[T]he privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution.  [Citations.] Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation . . . .  [Citations.]' [Citation.]  'The breadth of the

---

[3] The December 2016 letter allegedly stated, "'With regard to the original Note, CIT will provide you with the original Note indicating that [appellant's] obligation under the Note has been satisfied.'" (Italics omitted.)  The January 2017 letter allegedly stated: "'[T]he Torrance action is not final.  Accordingly, CIT will not be returning the original Note or Allonges to [appellant] until the Judgment in the Torrance Action has become final.[']"  "'CIT will return the original Note and Allonges to you once the Torrance action has concluded.[']"  (Italics omitted.)

litigation privilege cannot be understated. It immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution. [Citation.]' [Citation.] 'Any doubt about whether the privilege applies is resolved in favor of applying it. [Citation.]'" (*Finton, supra,* 238 Cal.App.4th at pp. 211-212.)

"'The litigation privilege has been applied in "numerous cases" involving "fraudulent communication or perjured testimony." [Citations.]' [Citation.] Because Civil Code section 47, subdivision (b) protects any statements or writings that have "'some relation'" to a lawsuit, communications made both during and in anticipation of litigation are covered by the statute." (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 965.)

Respondents' allegedly false statements were made while they were representing CIT in litigation concerning the foreclosure of appellant's property. In her complaint appellant claims that, based on respondents' "promise" to return the original note and allonges, she "refrained from pursuing the issue further *in the litigation that was ongoing at the time* because she was ignorant of the falsity of the written promise." (Italics added.)[4]

---

[4] In support of a special motion to strike the complaint, respondent Timothy McGinity declared under penalty of perjury: "[Appellant] alleges that I made two representations to her prior counsel that [respondents'] client, CIT Bank, would return to her the original note and allonges from her foreclosed loan. While I do not specifically recall making such statements, any statements I made on such subjects were in the context of representing our client (then CIT Bank) in connection with its various disputes with [appellant]."

"'[C]ommunications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege . . . ." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.) "[T]he word 'tort' means a *civil wrong*, other than a breach of contract, for which the law will provide a remedy in the form of an action for damages." (*Peredia v. HR Mobile Services, Inc.* (2018) 25 Cal.App.5th 680, 692.) Appellant's complaint consisted of five causes of action, all of which were based on tort liability: intentional misrepresentation, concealment, false promise, negligent misrepresentation, and fraud. Thus, the trial court did not err in sustaining the demurrer without leave to amend because respondents' allegedly false statements were absolutely immune from the tort liability asserted in appellant's complaint. (See *Harris v. King* (1998) 60 Cal.App.4th 1185, 1188 ["The absolute privilege of Civil Code section 47, subdivision (b) applies to all torts other than malicious prosecution, including fraud, negligence and negligent misrepresentation"].)

We reject appellant's claim that, because she "has shown malice in the conduct of [respondents], the privilege is not merely overcome; but it never arises in the first instance." "The litigation privilege, codified at Civil Code section 47, subdivision (b), . . . is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.'" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.)

*Appellant's Brazen Disrespect of this Court*

In June 2023 we denied appellant's motion filed on May 5, 2023.[5] Since then, we have been subjected to an unremitting,

_____

[5] The motion was entitled, "APPELLANT OBJECTS & REJECTS APPELLEE'S INCOMPLETE DISCLOSURE STATEMENT IN VIOLATION OF RULE 7.1(b), 26.1 and 3-410

unwarranted stream of invective from appellant. On July 24, 2023, appellant submitted to this court a document stating: "Appellant has now solicited congress and the Senate to enact an official investigation and Impeachment Proceedings. Presiding Judge Gilbert and Judge Yegan are now adversaries and they must recuse themselves Sua Sponte as required by law and in the Interest of Justice being done."

On July 31, 2023, appellant filed a motion to augment the record, which we denied. In the motion appellant stated, "[T]his Appellate Court and its Panel of Judges or its Chief Judge SHOULD BE ASHAMED to call themselves AMERICANS, or A SHAME TO SAY THAT THEY WORK FOR OR IN AN AMERICAN COURT OF LAW@!!!!" (Bold omitted.) Appellant repeated the same statement in another motion to augment the record that we received on October 18, 2023.

On September 12, 2023, we received the following notice from appellant: "THE FUNDAMENTAL DOCTRINE OF 'FAIRNESS' HAS BEEN THROWN OUT THE WINDOW IN THIS COURT. PREJUDICE; PREJUDICE OF THE JUDGES IS AFOOT. . . . [¶] . . . JUDGES, YOU NO LONGER HAVE AUTHORITY IN THESE PROCEEDINGS AND THEREFORE YOU ARE COMMITTING TREASON AND YOUR IMPEACHMENT WILL BE AT HAND ALONG WITH ALL WHO COLLABORATED WITH YOU."

---

DISCLOSURE OF PROFESSIONAL LIABILITY INSURANCE & MOVES FOR CORRECTION & SUPPLEMENT STATEMENT OF ALL REQUIRED INFORMATION & DISCLOSURES THEREOF AND JUDICIAL NOTICE PROVING NOTARY FRAUD."

On November 7, 2023, the day before oral argument, appellant filed a petition for a writ of mandamus in the California Supreme Court.  Appellant requested an order compelling justices of this division to disqualify themselves from appellant's appeal and "fire" the division's clerks.[6]  The petition alleged that certain justices of this division were "VIOLATING THEIR OATH OF OFFICE AND WARING [*sic*] WITH THE CONSTITUTION TO GIVE UNLAWFUL SPECIAL TREATMENT TO APPELLEE AND HIS ATTORNEY."  The petition further alleged that deputy clerks of this division were "Playing fast and loose with Government Docket and Records of the Courts, Tampering with the Docket, Obstructing alleged Pro Se Litigant filings in violation of Rule 576 (a)(1),(3) &(6) to give unfair and unlawful Tactical Advantages to Opposing parties that are attorney(s) and Appellee(s)."  The Supreme Court summarily denied the petition.

During oral argument, appellant threatened that disciplinary and legal action would be taken against the justices on the panel.  Appellant began her argument with the following

---

[6] The petition was entitled: "APPELLANT'S REQUEST FOR WRIT OF [MANDAMUS] OR OTHER DISCRETIONARY STAY FROM THE 2ND DISTRICT APPELLATE COURT PEREMPTORY . . . COMPELLING PRESIDING JUDGE GILBERT & HIS PANEL PURUSANT [*sic*] TO Canon 3E(4)(c) TO STEP DOWN AND DISQUALIFY CONSTITUTIONAL MISCONDUCT CHALLENGE FOR CAUSE MALFEASANCE AND FIRE THEDEPUTY [*sic*] CLERKS AND OFFICE OF THE CLERK AS BAD CONSTUDIAN(S) [*sic*] OF RECORDS & TORTIORIOUS [*sic*] UNLAWFUL INTERFERENCE WITH CASE & CASE TAMPERINGFOR [*sic*] SUBSTANTIAL RIGHTS OF APPELLANT HAS BEEN PREJUDICE [*sic*] IN VIOLATING OF 576 (a)(1), (3) & (6) AND A FAIR TRIAL CAN NOT BE HAD."

admonition: "The cloak of secrecy is out the window; you are all now under investigation or will be soon because this case is on appeal to the Federal court and You are all named as involuntary Appellees including the Judges. [¶] I must caution you all to be careful of trying to lie or misrepresent to me for any and everything you say from your own mouths and recordings can and will be used against you in a court of law."[7] The justices of this court do not "lie or misrepresent" to the litigants.

Despite appellant's casting of aspersions upon the integrity of this court, we have made a concerted effort to treat her respectfully and fairly. Although we have ample cause to hold her in contempt and impose punitive sanctions, we decline to do so this time. But if there is a next time, we may not be so generous.

*Disposition*

The judgment is affirmed. Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.                    CODY, J.

---

[7] The above quotation is taken verbatim from a written statement that appellant read to this court at oral argument. The day after oral argument, appellant submitted a copy of her written statement to the court. The clerk's office marked it as "received." Permission to file the statement is granted. (See the section of this opinion entitled, *"Appellant's Motions in the Instant Appeal," ante*, at p. 6.)

13

Tana L. Coates, Judge

Superior Court County of San Luis Obispo

_____

Teena Colebrook, in propria persona, for Plaintiff and Appellant.

Allen Matkins Leck Gamble Mallory & Natsis and Matthew J. Marino, for Defendants and Respondents.